UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD SALLEY, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OSIRIS THERAPEUTICS, INC., PETER FRIEDLI, THOMAS KNAPP, WILLI MIESCH, and CHARLES A. REINHART, III,<br><br>Defendants. | Case No._____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Todd Salley ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Osiris Therapeutics, Inc. ("Osiris" or the "Company") against Osiris and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Osiris will be acquired by Smith &

Nephew plc ("Smith & Nephew") through its subsidiaries Smith & Nephew Consolidated, Inc. ("Parent") and Papyrus Acquisition Corp. ("Purchaser") (the "Proposed Transaction").

2.     On March 12, 2019, Osiris issued a press release announcing that Osiris and Smith & Nephew had entered into an Agreement and Plan of Merger dated March 12, 2019 (the "Merger Agreement") to sell Osiris to Smith & Nephew. Pursuant to the terms of the Merger Agreement, on March 20, 2019, Purchaser commenced the Tender Offer to purchase all outstanding shares of Osiris for $19.00 in cash per share of Osiris common stock (the "Offer Price"), for a total of approximately $660.5 million in cash. The Tender Offer is scheduled to expire at 12:01 a.m. Eastern Time, on April 17, 2019.

3.     On March 20, 2019, defendants filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Osiris stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections, relied upon by Osiris' financial advisor Cantor Fitzgerald & Co. ("Cantor Fitzgerald") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cantor Fitzgerald; and (iii) the background process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Osiris stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.     In short, the Proposed Transaction will unlawfully divest Osiris' public stockholders of the Company's valuable assets without fully disclosing all material information

concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Osiris' common stock trades on the Nasdaq Global Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a common stockholder of Osiris.

9.      Defendant Osiris is a Maryland corporation and maintains its principal executive offices at 7015 Albert Einstein Drive, Columbia, Maryland 21046. Osiris researches, develops, manufactures, and commercializes regenerative medicine products intended to improve the health and lives of patients and lower overall healthcare costs. Osiris' common stock is traded

on the Nasdaq Global Market under the ticker symbol "OSIR."

10. Defendant Peter Friedli (" Friedli") is a co-founder of the Company, Chairman of the Board and, with the exception of February 2004 through June 2004, has been a director of the Company since January 1996.

11. Defendant Thomas Knapp ("Knapp") has been a director of Osiris since February 2017.

12. Defendant Willi Miesch ("Miesch") has been a director of Osiris since February 2018.

13. Defendant Charles A. Reinhart, III ("Reinhart") has been a director of Osiris since September 2018.

14. Defendants Friedli, Knapp, Miesch and Reinhart are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

15. Smith & Nephew is an English public limited company with its principal offices located at 15 Adam Street, London WC2N 6LA, United Kingdom.  Smith & Nephew is a portfolio medical technology business with leadership positions in Orthopaedics, Advanced Wound Management and Sports Medicine & ENT.  The ordinary shares of Smith & Nephew are listed and traded on the London Stock Exchange under the ticker symbol "SN" and its American Depositary Shares (each American Depositary Share representing two ordinary shares) are listed and traded on the New York Stock Exchange under the ticker symbol "SNN".

16. Parent is a Delaware corporation and an indirect wholly owned subsidiary of Smith & Nephew.  Parent's principal offices are located at 5600 Clearfork Main Street Fort Worth, Texas 76109.

4

17. Purchaser is a Maryland corporation and a direct wholly owned subsidiary of Parent. Purchaser's principal offices are located at The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093.

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Osiris common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

20. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of March 19, 2019, there were 34,528,289 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by Osiris or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

21. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a) Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

22.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

23.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

24.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

25.    Osiris, together with its wholly-owned subsidiary, Osiris Therapeutics International GmbH, researches, develops, manufactures and commercializes regenerative medicine products intended to improve the health and lives of patients and lower overall healthcare costs.  Osiris began operations in Ohio in 1992 as a Delaware corporation and reincorporated as a Maryland corporation in May 2010.

26.    From May 2010 to October 2013, Osiris operated in two business segments: therapeutics and biosurgery.  The therapeutics business focused on developing biologic stem cell

drug candidates from adult human bone marrow. In October 2013, Osiris sold its therapeutics business to Mesoblast International SARL. Since 2013, the Company has focused its resources on its biosurgery business, now the Company's only segment. The biosurgery segment focuses on using unique tissue preservation technologies to develop viable human tissue products designed to improve wound closure and surgical outcomes for patients and physicians over standard of care alone.

27. The Company has achieved commercial success with products in orthopedics, sports medicine, and wound care. Osiris' Grafix product line and Stravix are human placental tissue-based products, which are used in conjunction with standard of care for repair and regeneration of damaged tissues. The Company's BIO$^4$ bone graft is primarily used in spine, orthopedics, and trauma surgery to fill bone voids or as part of bone fusion procedures. Osiris' Cartiform allografts are a form of osteochondral allografts, which are primarily used to repair cartilage lesions.

28. On October 1, 2018, the Company launched for sale GrafixPL PRIME, its first commercially available product in the lyopreserved formulation. GrafixPL PRIME is a human placental membrane that can be stored at ambient temperatures.

29. On November 7, 2018, Osiris announced its third quarter 2018 financial results. For the quarter, revenue was $36.5 million, a 22.4% increase compared to $29.8 million in the third quarter of 2017. Gross profit was $26.7 million, compared to $21.9 million in the third quarter of 2017.

**The Proposed Transaction**

30. On March 12, 2019, Osiris issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

COLUMBIA, Md., March 12, 2019 (GLOBE NEWSWIRE) -- Osiris Therapeutics, Inc. (NASDAQ: OSIR), a regenerative medicine company focused on developing and marketing products for wound care, orthopedics, and sports medicine, today announced that it has entered into an agreement and plan of merger with Smith & Nephew plc pursuant to which Smith & Nephew will acquire Osiris for $19.00 per share in cash, a total of approximately $660.5 million in cash. This offer represents a 37% premium to the company's 90-day volume-weighted average stock price. The transaction was unanimously approved by the Boards of Directors of both companies.

Peter Friedli, Chairman of the Board and co-founder of Osiris, said, "This is a very good outcome for Osiris' shareholders. The Board concluded unanimously, after taking into account the requirements needed to take the business to the next level, that entering into this agreement represents the best way to maximize value for our stockholders." Mr. Friedli added, "I am immensely proud of the business we have built from our research into advanced regenerative technologies. I believe Smith & Nephew is the right home for Osiris and will allow our products to reach more customers, helping to restore quality of life for more patients."

"This agreement reflects the significant value that the Osiris team has generated for our shareholders under Peter Friedli's leadership. We believe this transaction will also benefit our customers, employees, and partners," said Samson Tom, President and Chief Executive Officer of Osiris.

Completion of the transaction is expected in the second quarter of 2019, pending the successful completion of the tender offer and all other closing conditions. Osiris' employees are expected to join Smith & Nephew on completion. Until that time, Osiris will continue to operate as a separate and independent company.

Cantor Fitzgerald & Co. rendered a fairness opinion to the Board of Directors of Osiris in connection with the transaction. Hogan Lovells US LLP is acting as legal counsel for Osiris.

**Transaction Details**

Under the terms of the agreement and plan of merger, Smith & Nephew has formed an acquisition subsidiary, Papyrus Acquisition Corp. ("Purchaser"), that will commence a tender offer no later than April 2, 2019 to purchase all outstanding shares of Osiris for $19.00 per share in cash, and Osiris will file a recommendation statement containing the unanimous recommendation of the Osiris Board that Osiris stockholders tender their shares to Smith & Nephew. Following the completion of the tender offer, Smith & Nephew expects to promptly consummate a merger of Purchaser and Osiris in which shares of Osiris that have not been purchased in the tender offer will be converted into the right to receive the same cash price per share as paid in the tender offer.

> The tender offer and the merger are subject to customary closing conditions, including the tender of at least a majority of the outstanding Osiris shares on a fully diluted basis and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The merger agreement includes customary termination provisions for both Osiris and Smith & Nephew, including a right for either party to terminate if the transactions have not been completed by December 12, 2019.
>
> The merger agreement provides that, in connection with the termination of the merger agreement under specified circumstances, including termination by Osiris to accept a superior proposal, Osiris will be required to pay to Smith & Nephew a fee equal to $18,682,450.

**The Recommendation Statement Contains Material Misstatements or Omissions**

53.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Osiris' stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in favor of the Proposed Transaction or seek appraisal.

54.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections, relied upon by Osiris' financial advisor Cantor Fitzgerald in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cantor Fitzgerald; and (iii) the background process leading to the Proposed Transaction. Accordingly, Osiris stockholders are being asked to make a tender or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Osiris' Financial Projections*

55.     The Recommendation Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

56.     For example, the Recommendation Statement sets forth that in connection with its fairness opinion, Cantor Fitzgerald reviewed, among other things: "certain operating and financial information relating to the Company's business and prospects, including projections for the Company for the four years ended December 31, 2022, ***all as prepared and provided to Cantor Fitzgerald by the Company's management***[.]"  Recommendation Statement at 23 (emphasis added).

57.     Additionally, in connection with Cantor Fitzgerald's *Discounted Cash Flow Analysis* ("DCF") of Osiris, the Recommendation Statement further sets forth:

> Cantor Fitzgerald performed a discounted cash flow analysis of the Company by calculating the estimated present value of the standalone, unlevered, after-tax free cash flows that the Company was forecasted to generate during the period beginning March 31, 2019 through December 31, 2022 based on internal estimates provided by the Company's management.

*Id.* at 27.  Yet, the Recommendation Statement fails to disclose the Company's unlevered after-tax free cash flows ("UFCFs") for the four years ended December 31, 2022 (including the period beginning March 31, 2019 through December 31, 2019 utilized by Cantor Fitzgerald in its DCF) and the definition of UFCFs.

53.     Additionally, the Recommendation Statement sets forth that on December 14, 2018, defendant Friedli met with Phil Cowdy, Executive Vice President, Corporate Development of Smith & Nephew regarding "the need for the Company to provide Smith & Nephew with updated financial statements and projections for the Company in January 2019[.]"  *Id.* at 17.  The Recommendation Statement, however, fails to disclose whether management further updated its projections, when the projections provided to Cantor Fitzgerald to utilize in connection with its fairness opinion were created, and the details and key assumptions underlying any earlier projections or updates thereto.

54. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Cantor Fitzgerald's Financial Analyses*

55. The Recommendation Statement describes Cantor Fitzgerald's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Cantor Fitzgerald's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Osiris' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Cantor Fitzgerald's fairness opinion in determining whether to tender their shares or seek to exercise their appraisal rights. This omitted information, if disclosed, would significantly alter the total mix of information available to Osiris' stockholders.

56. With respect to Cantor Fitzgerald's *DCF*, the Recommendation Statement is materially misleading and incomplete because it fails to disclose: (i) Osiris' projected UFCFs for the period beginning March 31, 2019 through December 31, 2022 and the definition of UFCFs; (ii) quantification of the inputs and assumptions underlying the selection of the discount rate range of 10.5% to 12.5%. (iii) Cantor Fitzgerald's basis for applying terminal revenue multiples ranging from 3.0x to 4.0x; (iv) the terminal value of the Company; and (v) the implied perpetuity growth rates resulting from the analysis.

57. With respect to Cantor Fitzgerald's *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions

included in the analyses. The Recommendation Statement further fails to disclose the company multiples Cantor Fitzgerald considered not meaningful and excluded from the *Selected Publicly Traded Companies Analysis* and the reasons Cantor Fitzgerald considered these company multiples not meaningful and excluded them.

58. The omission of this information renders the statements in the "Opinion of Cantor Fitzgerald & Co." and "Certain Unaudited Prospective Financial Information" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

59. The Recommendation Statement also omits material information relating to the sale process leading up to the Proposed Transaction.

60. The Recommendation Statement sets forth that "In mid-2018, a representative of Company A contacted Mr. Friedli to initiate discussions regarding a potential acquisition of the Company's wound care business, which includes the Company's Grafix and Stravix product lines. On May 30, 2018, the Company entered into a mutual non-disclosure disclosure [sic] agreement with Company A." *Id.* at 11. Critically, the Recommendation Statement fails to expressly indicate whether the non-disclosure agreement the Company entered into with Company A is still in effect and/or contains a "don't-ask, don't-waive" standstill provisions that is presently precluding Company A from making a topping bid for the Company.

61. The disclosure of the terms of the non-disclosure agreement with Company A is crucial to Osiris stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

62. The omission of this information renders the statements in the "Background of the

Merger Agreement" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

63. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed tender or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

64. Plaintiff repeats all previous allegations as if set forth in full.

65. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Osiris stockholders to tender their shares in the Tender Offer.

66. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

67. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

68. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants

undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

69. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

70. Plaintiff repeats all previous allegations as if set forth in full.

71. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

72. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

73. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

## COUNT III

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

74. Plaintiff repeats all previous allegations as if set forth in full.

75. The Individual Defendants acted as controlling persons of Osiris within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Osiris and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

76. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue

contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

78. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

79. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Osiris, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: March 29, 2019                                **WEISSLAW LLP**

                                                                                 Richard A. Acocelli
                                                                                 1500 Broadway, 16th Floor
                                                                                 New York, New York 10036
                                                                                 Tel: (212) 682-3025
                                                                                 Fax: (212) 682-3010
                                                                                 Email: racocelli@weisslawllp.com

                                                                                 *Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

17